UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 11-CV-10219-GAO

DEREK BENARD JOHNSON
Plaintiff,

v.

MICHAEL J. ASTRUE,
Commissioner of the Social Security Administration
Defendant.

OPINION AND ORDER
September 21, 2012

O'TOOLE, D.J.

Pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), the plaintiff, Derek Johnson, appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying the plaintiff's application for Social Security Disability Insurance ("SSDI") and Supplemental Security Income ("SSI") benefits. The plaintiff applied for SSDI and SSI benefits on October 22, 2009, claiming disability as of June 6, 2005 due to chronic pain in his right foot. After his claims were denied upon initial review, and again upon reconsideration, the plaintiff filed a written request for a hearing before an Administrative Law Judge ("ALJ"). Following a hearing, an ALJ issued a decision in which he concluded that the plaintiff was not disabled. After the Disability Review Board failed to complete a review of the ALJ's decision within ninety days of its issuance, the ALJ's decision was rendered the final decision of the Commissioner. Before the Court are the plaintiff's motion to reverse the Commissioner's decision and remand the matter for further proceedings (dkt. no. 8), and the defendant's motion to affirm (dkt. no. 11).

I.      **Background**

On the date of his application for benefits, the plaintiff was forty-seven years old. (Administrative Tr. at 98 [hereinafter R.].)[1] He has a high school diploma and, for twenty years, worked as a laundry utility press operator. (R. at 124, 127.) The plaintiff stopped working on June 6, 2005, the alleged onset date, and has not engaged in substantial gainful activity since. (Id. at 10, 124.) He claims disability due to chronic pain in his right foot as a result of second and third degree burns sustained as a child. (Id. at 25-26, 123, 196.)

The plaintiff first sought treatment for the pain in his right foot from Dr. Julien Dedier, the plaintiff's primary care physician, on September 28, 2009. (Id. at 181.) At that initial meeting, Dr. Dedier examined the plaintiff and noted that his gait was antalgic, that he suffered from tenderness in his right foot, and that he had some limitations in his range of motion. (Id. at 183.) However, Dr. Dedier found no erythema, swelling, or motor function impairment. (Id.) Moreover, Dr. Dedier observed that the plaintiff was alert and oriented. (Id. at 183.) After consulting with the plaintiff, Dr. Dedier prescribed naproxen, an anti-inflammatory drug, and ordered diagnostic radiology scans. (Id. at 181, 184.) Those scans subsequently revealed no evidence of bone, joint, or soft tissue abnormality, nor did they show any fracture or dislocation. (Id. at 185.)

At a follow-up appointment with Dr. Dedier on February 1, 2010, the plaintiff again presented with pain in his right foot. (Id. at 191.) Again, Dr. Dedier noted that the plaintiff's gait was antalgic, that he suffered from tenderness in his right foot, and that he had some limitations

---

[1] The administrative record has been filed electronically (dkt. no. 7). In its original paper form, its pages are numbered in the lower right-hand corner of each page. Citations to the record are to the pages as originally numbered, rather than to numbering supplied by the electronic docket.

in his range of motion, but Dr. Dedier found no erythema, swelling, or motor function impairment. (<u>Id.</u> at 193.) Dr. Dedier further observed that the plaintiff was alert and oriented, that his mood and affect were appropriate, and that he made good eye contact. (<u>Id.</u>) Significantly, Dr. Dedier's notes do not indicate that the plaintiff reported any adverse side-effects from his medication during that meeting. (<u>Id.</u>) Dr. Dedier prescribed the plaintiff acetaminophen and referred him to Dr. Geoffrey Habershaw, a podiatrist. (<u>Id.</u> at 191, 193-194.)

The plaintiff saw Dr. Habershaw on April 5, 2010. (<u>Id.</u> at 195.) Again, the plaintiff presented only with pain in his right foot and Dr. Habershaw's notes do not indicate that the plaintiff reported any adverse side-effects from his medication. (<u>Id.</u>) Upon examining the plaintiff, Dr. Habershaw made findings substantially similar to those of Dr. Dedier, noting that the plaintiff's gait was antalgic and finding some limitations in his range of motion, but observing no erythema or swelling. (<u>Id.</u> at 196.) Dr. Habershaw noted probable neuritis secondary to burn injuries and prescribed the plaintiff capsaicin topical ointment and lidocaine, a local anesthetic. (<u>Id.</u> at 196, 197.)

At the plaintiff's final documented medical appointment, with Dr. Dedier on June 28, 2010, the plaintiff again presented with pain in his right foot, but did not report any adverse side-effects from his medication. (<u>Id.</u> at 199.) Dr. Dedier observed an antalgic gait, "mild-moderate tenderness" in the plaintiff's right foot, and limitations in his range of motion, but found no erythema, swelling, or motor function impairment. (<u>Id.</u> at 201.) Dr. Dedier also observed that the plaintiff was alert and oriented, that his mood and affect were appropriate, and that he made good eye contact. (<u>Id.</u> at 201.) After the plaintiff told Dr. Dedier that none of the medications thus far prescribed had been effective at completely relieving the plaintiff's pain, Dr. Dedier prescribed gabapentin, a drug used to treat neuropathic pain. (<u>Id.</u> at 199, 202.)

Appearing pro se at a hearing before an ALJ on September 7, 2010, the plaintiff testified that he experienced chronic pain and discomfort in his right foot. (Id. at 25-26.) The plaintiff also testified that staying off of his right foot relieves the pain and discomfort, and that the gabapentin, together with the naproxen, provides some relief. (Id.) Finally, at the hearing, the plaintiff stated on two occasions that his medication made him drowsy, but did not indicate which medication in particular caused this side-effect or elaborate as to its persistence. (Id. at 27, 35.) A vocational expert also testified, and identified several positions that, "someone of similar age, education, and vocational background as the Claimant, who'll be limited to only sedentary work with no pushing or pulling with the lower right leg," could perform, including order clerk and eyeglass polisher. (Id. at 30-34.)

In a decision dated September 20, 2010, the ALJ concluded that the plaintiff has a severe impairment that prevents him from returning to work as a laundry utility press operator. (Id. at 10-12.) However, the ALJ also found that the plaintiff has the residual functional capacity to perform unskilled sedentary work that does not require any pushing or pulling with the right lower extremity and that such work is widely available in the national economy. (Id. at 13.) Accordingly, the ALJ found that the plaintiff was not disabled within the meaning of the Social Security Act, and denied the plaintiff's application for SSDI and SSI benefits. (Id. at 14.)

**II.      Standard of Review**

In reviewing an ALJ's decision to deny a claimant's application for SSDI or SSI benefits, this Court's role is limited to determining "whether the ALJ used the proper legal standards and found facts upon the proper quantum of evidence." Ward v. Comm'r of Soc. Sec., 211 F.3d 652, 655 (1st Cir. 2000). While this Court reviews questions of law de novo, it defers to an ALJ's factual findings where they are supported by substantial evidence. (Id.) An ALJ's factual finding

is supported by substantial evidence "if a reasonable mind, reviewing the evidence in the record as a whole, could accept [the evidence] as adequate to support his conclusion." <u>Irlanda Ortiz v. Sec'y of Health & Human Servs.</u>, 955 F.2d 765, 769 (1st Cir. 1991) (<u>per curiam</u>) (quoting <u>Rodriguez v. Sec'y of Health & Human Servs.</u>, 647 F.2d 218, 222 (1st Cir.1981)).

**III.**     **Discussion**

The plaintiff advances several arguments in support of his motion to reverse the Commissioner's decision and remand the matter for further proceedings. First, he argues that the ALJ's disability determination was not supported by substantial evidence because the ALJ failed to address the extent to which non-exertional limitations—namely, the side-effects of the plaintiff's prescribed medication and his chronic pain—affect the plaintiff's residual functional capacity to perform sedentary work. Second, the plaintiff argues that the ALJ's disability determination was not supported by substantial evidence because the ALJ failed to instruct the vocational expert to consider these non-exertional limitations, thus rendering the expert's testimony incapable of supporting the ALJ's disability determination. Finally, the plaintiff argues that the ALJ breached his duty to develop fully a *pro se* claimant's arguments for granting benefits.

A.     <u>The ALJ did not err by failing to address the extent to which non-exertional limitations affect the plaintiff's ability to perform sedentary work.</u>

The plaintiff's first contention is that the ALJ's disability determination was not supported by substantial evidence because the ALJ failed to address what effect, if any, the plaintiff's prescribed medication and chronic pain have on his ability to perform sedentary work. Where, as here, a claimant establishes that he suffers from a severe physical impairment[2] that

---

[2] The ALJ disagreed with state agency medical consultants who would not have classified the plaintiff's foot pain as a "severe" impairment.

does not meet or equal an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1, an ALJ

must consider the extent to which the claimant's impairment and any related symptoms affect his

residual functional capacity. 20 C.F.R. § 404.1529(d)(4) (2012); Avery v. Sec'y of Health &

Human Servs., 797 F.2d 19, 21 (1st Cir. 1986). Specifically, an ALJ must consider:

1. The nature, location, onset, duration, frequency, radiation, and intensity of any pain;
2. Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);
3. Type, dosage, effectiveness, and adverse side-effects of any pain medication;
4. Treatment, other than medication, for relief of pain;
5. Functional restrictions; and
6. The claimant's daily activities.

(Id. at 29) (emphasis added). However, an ALJ is only required to consider those impairments

that a claimant alleges or concerning which a claimant has submitted evidence. 20 C.F.R. §

404.1512(a) (2012).

The plaintiff first alluded to the fact that his medication made him drowsy during his

September 7, 2010 hearing. (R. at 27, 35.) The record does not indicate that the plaintiff reported

drowsiness or any other side-effects associated with his medication prior to this date. In fact, on

two forms titled "Activities of Daily Living"—one signed and dated November 26, 2009, the

other signed and dated April 5, 2010—the plaintiff indicated that he experienced difficulty

sleeping. (Id. at 137, 149.) Furthermore, at no point prior to this appeal did the plaintiff make or

provide support for the additional claim that drowsiness restricts his ability to perform sedentary

work.

As for the plaintiff's pain, the ALJ credited the plaintiff's claim that his pain persists,

albeit to a lesser degree, even when seated. (R. at 12, 35.) But, as the record indicates throughout,

the plaintiff claims disability because his pain prevents him from standing for long periods—not,

prior to this appeal, because it prevents him from, e.g., sitting or concentrating. As the ALJ

observed, the fact that neither Dr. Dedier nor Dr. Habershaw referred the plaintiff for surgical treatment or prescribed the plaintiff narcotics to manage his pain suggests that the plaintiff's pain is not so severe as to limit his ability to perform sedentary work. Consequently, the ALJ could reasonably conclude, based on the plaintiff's medical record and the absence of any assertions or evidence to the contrary, that neither the plaintiff's medication nor his chronic pain imposes significant non-exertional limitations on his ability to perform sedentary work.

> B.  The ALJ did not err by failing to instruct the vocational expert to consider the extent to which non-exertional limitations affect the plaintiff's ability to perform sedentary work.

The plaintiff next contends that the ALJ's disability determination was not supported by substantial evidence because he neglected to instruct the vocational expert to consider the plaintiff's non-exertional limitations, thus rendering the expert's testimony incapable of supporting the ALJ's disability determination. Where a claimant establishes that he is unable to perform previous work, the ALJ bears the burden of showing that the claimant remains able to engage in other forms of substantial gainful activity. Arocho v. Sec'y of Health & Human Servs., 670 F.2d 374, 375 (1st Cir. 1982). Usually, an ALJ discharges this burden by relying on a vocational expert who can testify—given the claimant's age, education, work experience, and residual functional capacity—to the availability of specific jobs that the claimant can perform. Id. However, an ALJ may rely on a vocational expert's testimony only insofar that it is informed by the ALJ's findings. Id. Thus, where a vocational expert's testimony is based on a hypothetical question that fails to convey precisely the claimant's residual functional capacity, the ALJ cannot rely on that testimony to discharge his burden of showing that the claimant remains able to engage in other substantial gainful activity. See, e.g., Rose v. Shalala, 34 F.3d 13, 19 (1st Cir.

1994) (vacating and remanding where an ALJ neglected to instruct a vocational expert to consider the "significant functional limitation" imposed by the claimant's fatigue symptoms).

Here, because the ALJ could reasonably conclude, based on the plaintiff's medical record and the absence of any assertions or evidence to the contrary, that neither the plaintiff's medication nor his chronic pain imposes significant non-exertional limitations on his ability to perform sedentary work, the ALJ did not err by neglecting to instruct the vocational expert to consider these factors.

  C. <u>The ALJ did not err by failing to develop more fully the claimant's arguments for granting benefits.</u>

Finally, the plaintiff argues that the ALJ breached his duty to develop fully a *pro se* claimant's arguments for granting benefits. When a claimant appears *pro se*, an ALJ has a heightened duty to investigate the facts and develop the arguments for granting benefits. <u>Heggarty v. Sullivan</u>, 947 F.2d 990, 997 (1st Cir. 1985) (<u>per curiam</u>). But an ALJ is not required to "go to inordinate lengths to develop a claimant's case." <u>Thompson v. Califano</u>, 556 F.2d 616, 618 (1st Cir. 1977). And where a claimant has failed to offer testimony linking an alleged non-exertional limitation to an alleged inability to perform sedentary work, an ALJ has no obligation to develop more fully the record on this point. <u>Devlin v. Sec'y of Health & Human Servs.</u>, 981 F.2d 1245, 1245 (1st Cir. 1992) (<u>per curiam</u>).

Here, while the record documents that the plaintiff consistently complained that he was unable to stand on his feet for long periods, it indicates that only twice—and only at his September 7, 2010 hearing—did the plaintiff complain of side-effects from his medication that suggest non-exertional limitations on his ability to perform sedentary work. Moreover, only on appeal does the plaintiff make the additional, necessary claim that the side-effects of his medication and his chronic pain in fact impose such limitations. Because the plaintiff failed to

make assertions, submit evidence, or provide testimony that sufficiently brought these questions to the attention of the ALJ, the ALJ did not err in failing to develop the record more fully on these points before reaching his decision. <u>Santiago v. Sec'y of Health & Human Servs.</u>, 944 F.2d 1, 6 (1st Cir. 1991) (<u>per curiam</u>).


**IV.**     **Conclusion**

For the foregoing reasons, the plaintiff's motion to reverse the Commissioner's decision and remand the matter for further proceedings (dkt. no. 8) is DENIED and the defendant's motion to affirm the Commissioner's decision (dkt. no. 11) is GRANTED. The decision of the Commissioner is AFFIRMED.

It is SO ORDERED.

<u>/s/ George A. O'Toole, Jr.</u>
United States District Judge